# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN N.,[1] <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security,[2] <br><br> Defendant. | Case No. 8:24-cv-01542-MAA <br><br> **MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER** |

On July 12, 2024, Plaintiff filed a Complaint seeking review of the Commissioner's final decision denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act.  This matter is fully briefed and ready for decision.  For the reasons discussed below, the Commissioner's final decision is affirmed, and this action is dismissed with prejudice.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Frank Bisignano became Commissioner of Social Security on May 6, 2025.  Under Federal Rule of Civil Procedure 25(d), he is automatically substituted for Martin O'Malley as Defendant in this suit.

**ADMINISTRATIVE HISTORY**

On May 1, 2020, Plaintiff protectively filed an application for SSI, alleging disability beginning on July 1, 2009. (Administrative Record ("AR") 47, 356-62.) After the application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 47, 170-75, 182-87, 190.) On May 8, 2023, the ALJ conducted an administrative hearing where Plaintiff appeared with counsel, and where the ALJ heard testimony from Plaintiff and a vocational expert ("VE"). (AR 71-96.)

In a decision dated August 28, 2023, the ALJ denied Plaintiff's disability claim after making the following findings under the agency's five-step disability evaluation. (AR 44-70.) Plaintiff had engaged in substantial gainful activity during the periods of 2014, 2018, 2019, and the second and third quarters of 2021, but there had been a continuous 12-month period during which plaintiff did not engage in substantial gainful activity. (AR 49-50.) Plaintiff had severe impairments of degenerative disc disease, status post left shoulder fracture, status post traumatic brain injury, bipolar disorder with psychotic features, anxiety disorder, and obesity. (AR 50.) He did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (AR 50.) He had a residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 416.967(b) except he can never climb ropes, ladders or scaffolds; never be exposed to unprotected heights or hazardous machinery; occasionally climb stairs and ramps; never crawl; occasionally kneel; occasionally stoop and crouch; occasional reaching overhead and frequent reaching in all other directions; frequently balance; able to wear light filtering lenses; occasional contact with supervisors, co-workers and the public; able to do only simple and routine tasks; work must be performed in an environment free of fast paced production requirements where

productivity is measure at the end of the day and with only occasional changes to essential job functions.

(AR 52-53.)

The ALJ further found that Plaintiff has been unable to perform any past relevant work. (AR 60.) Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including mail sorter, office helper, and order caller. (AR 61.) Accordingly, the ALJ concluded that Plaintiff was not disabled, as defined by the Social Security Act, since May 1, 2020, the date the application was filed. (AR 62.) On May 30, 2024, the Appeals Council denied Plaintiff's request for review. (AR 1-4.) Thus, the ALJ's decision became the final decision of the Commissioner.

## DISPUTED ISSUES

The parties' dispute involves the following issues:

1. Whether substantial evidence supports the ALJ's mental RFC determination.
2. Whether the ALJ properly considered the lay witness testimony.

(Plaintiff's Opening Brief ("Opening Brief"), ECF No. 14 at 4-14; Defendant's Brief ("Response"), ECF No. 16 at 2.)[3]

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir.

---
[3] With the exception of the Administrative Record, citations to pages in docketed documents reference the page numbers created by the CM/ECF headers.

3

2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### I. Substantial Evidence Supported the RFC Determination (Issue One).

Plaintiff contends that the ALJ's determination of his RFC regarding his mental impairment limitations was not supported by substantial evidence. (Opening Brief, ECF No. 14 at 4-8.) He argues that the ALJ improperly assessed the opinions from State agency psychological consultants F. Mateus, M.D., and T. Brode, Psy.D., who opined Plaintiff could have only minimal contact with people, in limiting Plaintiff to occasional contact with supervisors, co-workers, and the public. (*Id.* at 7-8.)

#### A. Applicable Law

A claimant's RFC represents the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1); *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998); *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An ALJ's RFC determination "must set out *all* the limitations and restrictions of the particular claimant." *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original) (internal quotation marks omitted). An ALJ will

///

4

assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).

An agency's RFC assessment "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling 96-8P, 1996 WL 374184, at *7; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). Ultimately, the ALJ is responsible for translating and incorporating supported medical evidence into a succinct RFC. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Foster v. Kijakazi*, 2022 WL 3230472, at *2 (9th Cir. 2022) ("An ALJ considers opinions from medical sources on the issue of a claimant's RFC, but the final responsibility for deciding this issue is reserved to the Commissioner.") (citations, internal quotation marks, and alterations omitted) (unpublished). "[I]t is well established that RFC determinations are legal decisions, not medical opinions." *Willie Q. W. v. Bisignano*, 2025 WL 2495535, at *9 (C.D. Cal. Aug. 27, 2025).

**B.  Background.**

Plaintiff's mental health was assessed by several doctors. On August 16, 2020, Dr. Sohini Parikh, M.D. performed a complete psychiatric evaluation of Plaintiff, who complained of depression, borderline disorder, and schizoaffective disorder, and opined that Plaintiff was "moderately limited" in his ability to interact appropriately with the public, co-workers, and supervisors. (AR 2154.)

Two weeks later, State agency physician F. Mateus, M.D. reviewed Dr. Parikh's opinion and the medical records and assessed Plaintiff as "[m]oderately limited" in his ability to interact appropriately with the general public and get along with co-workers, noting that his "mood would affect his social interaction." (AR

123-24.) Dr. Mateus opined that Plaintiff was "[n]ot significantly limited" in his ability to work in coordination with or in proximity to others without being distracted by them and to maintain socially appropriate behavior. (AR 123-24.) Dr. Mateus indicated that Plaintiff was capable of "doing at least simple tasks with minimal contact with people so long as he is compliant with treatment." (AR 124.)

In April 2021, State agency physician Tawnya Brode, Psy.D. also considered Dr. Parikh's opinion and affirmed Dr. Mateus's opinion that Plaintiff was moderately limited in his ability to interact appropriately with the general public and to get along with co-workers. (AR 158-59.) She, too, opined that Plaintiff could perform work that had "minimal contact with people." (AR 159.)

Finally, in November 2022, Dr. Mohammad Rez Mohammadi, who had been treating Plaintiff for major depression disorder and anxiety, indicated Plaintiff was disabled because he would miss at least five days per month and be off-task at least 50% of the time but did not indicate any limitations with social interaction. (AR 2822.)

The ALJ determined that Plaintiff had severe mental impairments of status post traumatic brain injury, bipolar disorder with psychotic features, and anxiety disorder. (AR 50.) In assessing Plaintiff's mental impairments under the paragraph B criteria, the ALJ found Plaintiff had a "moderate limitation" in interacting with others. (AR 51.) The ALJ noted that Plaintiff alleged "significant societal dysfunction" from anxiety, irritability, and isolation but exhibited "few significant social deficits when interacting with treating and examining sources apart from being dismissive and demanding." (AR 51-52.) In formulating Plaintiff's RFC, the ALJ limited Plaintiff to "occasional contact with supervisors, co-workers and the public." (AR 52-53.)

C. **Analysis.**

Here, Plaintiff argues that an RFC that limits Plaintiff to "occasional" contact with others is not supported by substantial evidence. Plaintiff contends that this

6

limitation conflicts with the medical opinions the ALJ found persuasive—the State agency opinions from Drs. Mateus and Brode—that limited him to "minimal contact" with others. (Opening Brief, ECF No. 14 at 7-8.) The essence of Plaintiff's argument is that the ALJ improperly translated the medical opinions into an RFC determination that failed to properly account for Plaintiff's restrictive social interaction ability.

"[A]t least in the context of physical exertion, both the Dictionary of Occupational Titles and a Social Security Ruling have defined 'occasionally' to mean 'from very little up to one-third of the time.'" *Leach v. Kijakazi*, 70 F.4th 1251, 1258 (9th Cir. 2023). Plaintiff argues this definition does not encompass a restriction of "minimal contact" as opined by Drs. Mateus and Brode, noting that it would allow up to 2.66 hours per day of interaction with the public and co-workers. (Opening Brief, ECF No. 14 at 7.) Plaintiff, however, acknowledges that the term "minimal" is not defined by the Commissioner and the term "occasional" would also cover instances of "very little" interaction. The RFC does not need to directly correspond to a specific medical opinion; rather, it is the ALJ's responsibility to weigh conflicting medical evidence and translate accepted medical opinions into "concrete restrictions." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

In this case, despite finding Plaintiff needed "minimal contact with people," neither Dr. Mateus nor Dr. Brode indicated that Plaintiff was significantly limited in the ability to work in coordination with or in proximity to others without being distracted by them. (AR 123, 158.) Thus, the ALJ reasonably interpreted the evidence from Drs. Mateus and Brode to allow Plaintiff to have "occasional" contact with coworkers and the public. *See Hernandez v. O'Malley*, 2024 WL 1596463, at *2 (9th Cir. 2024) (rejecting argument that state agency consultants' opinions that claimant only had "capacity to engage in 'minimal' coordination and 'brief, non-intensive interaction with others,'" was "inconsistent with the finding

7

that [claimant] has the capacity to engage in 'occasional' coordination and contact with others"); *Addison J. T. v. Bisignano*, 2025 WL 2531500, at *4 (C.D. Cal. Aug. 29, 2025) ("Finding that [the claimant] must not have more than 'occasional interaction' with others is consistent with a medical opinion that [the claimant] would function best with minimal contact."); *Kimberly H. v. Saul*, 2021 WL 3861156, at *6 (D. Or. Aug. 30, 2021) (finding doctor's opinion that claimant was "moderately limited" in her ability to interact appropriately with the general public and should "have minimal contact with coworkers/public due to distractions" was consistent with ALJ's RFC that limited claimant to "occasional" interaction with the public and to working "independently, without the need for coordinated efforts with coworkers").

The record reflects that the ALJ considered the relevant medical and opinion evidence and assessed an RFC that is supported by substantial evidence. *See Ruiz v. Comm'r of Soc. Sec.*, 2023 WL 6306457, at *8 (D. Ariz. Sept. 28, 2023) (finding substantial evidence supported mental impairment limitations because it was "within the ALJ's discretion to translate [the doctor's] ambiguous social interaction findings into the RFC."). Accordingly, reversal is not warranted for this issue.

## II.  The ALJ Considered the Lay Witness Testimony (Issue Two).

Plaintiff faults the ALJ for failing to properly consider the statements from Plaintiff's uncle, Reza Banikazemi, who submitted third-party function reports in support of Plaintiff's disability claim. (Opening Brief, ECF No. 14 at 8-14.) Plaintiff argues that the ALJ failed "to articulate how the evidence submitted by Banikazemi was considered" and failed to provide a "sufficient rationale to reject the lay evidence." (*Id.* at 13.) Respondent asserts that there was no error because ALJs are no longer required to provide their reasons for rejecting lay witness testimony in their decision and, even if they were required, the ALJ did so in this case. (Response, ECF No. 16 at 5-7.)

///
///

### A.    Applicable Law

Under the revised regulations, ALJs are "not required to articulate" how they evaluate evidence from non-medical sources, such as social welfare agency personnel, using the same factors applicable to medical opinion evidence. 20 C.F.R. §§ 404.1520c(d) & (e); *Trogdon v. O'Malley*, 2024 WL 3949081, at *1 (9th Cir. 2024) (unpublished). Nevertheless, it is an "open question" whether ALJs must consider lay witness evidence, *see Fryer v. Kijakazi*, 2022 WL 17958630, at *3 n.1 (9th Cir. 2022), and the Ninth Circuit has "not yet addressed" whether they are required to provide "germane reasons" for discounting relevant lay witness testimony. *See Stephens v. Kijakazi*, 2023 WL 6937296, at *2 (9th Cir. 2023). Other relevant regulations indicate that ALJs will consider evidence from non-medical sources when evaluating a claim of disability. *See, e.g.,* 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), 416.929(c)(1), 416.945(a)(3); *see also Joseph L. S. v. Kijakazi*, 2023 WL 5611408, at *5 (C.D. Cal. Aug. 30, 2023) ("The requirement that an ALJ consider lay witness testimony comes from other regulations, regulations that remain intact after the 2017 amendment."). Moreover, an ALJ may not reject "significant probative evidence" without explanation. *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

### B.    Background.

On May 24, 2020, Banikazemi submitted a third-party function report. (AR 532-39.) Banikazemi indicated that he had known Plaintiff for more than 15 years and helped Plaintiff around the house. (AR 532.) According to Banikazemi, Plaintiff had difficulty sleeping, suffered from insomnia due to bad dreams, and needed help with his personal care. (AR 533.) He was able to prepare his own meals with a microwave, did limited chores around the house, and only went out to get groceries. (AR 534-35.) Banikazemi noted that it took Plaintiff a "long time" because he was "very slow" in doing any activity. (AR 534.) Due to his "mental, manic psychotic disorder," he was in a "vegetative state" most of the time and needed assistance. (AR 535-36.) Banikazemi also stated that Plaintiff had "bad relationship[s]" and "does not get along" with others but noted that he

1  was "ok" interacting with authority figures. (AR 537-38.) Banikazemi indicated Plaintiff
2  had not had a job since 2014 because he cannot process things well, has panic attacks, and
3  is unable to handle changes in routine. (AR 537-38.) Banikazemi believed Plaintiff's
4  physical and mental health was deteriorating. (AR 536, 538.)

5       On February 21, 2021, Banikazemi submitted a second report that described many
6  of the same difficulties Plaintiff faced in his daily activities, including falling and staying
7  asleep, dressing himself, preparing meals, and doing chores around the house. (AR 682-
8  84.) Banikazemi indicated Plaintiff had memory problems and needed reminders to do
9  things but was able to drive a car, shop for groceries, and handle his own money and bills.
10 (AR 685.) Banikazemi stated that Plaintiff had "limited hobbies" and mostly watched
11 television due to his mood swings, depression, pain, and anxiety. (AR 686.) Banikazemi
12 believed Petitioner's mental disabilities were "getting worse," causing concentration
13 problems and needing to be supervised to follow instructions. (AR 687.) Plaintiff had
14 been unable to keep a job for more than "1 to 3 weeks" because he had difficulty getting
15 along with people, poor stress management, and panic attacks. (AR 688.)

16     **C.**    **Analysis.**

17      Although the Court concurs with Respondent that the ALJ was not required to
18 articulate how he considered non-medical source evidence using the same factors
19 applicable to medical opinion evidence, *see* 20 C.F.R. § 416.920c(d), the complete failure
20 to consider lay witness testimony can be reversible error where it is not plainly harmless.
21 *See Mahnaz M. v. Kijakazi*, 2024 WL 21794, at *8 (S.D. Cal. Jan. 2, 2024) ("This Court
22 finds that the revised regulations plainly allow for the ALJ to render a decision on a
23 plaintiff's disability claim without articulating findings regarding lay witness statements,
24 so long as the witness testimony has been considered."); *Schilling v. Comm'r of Soc. Sec.*,
25 2022 WL 17418343, at *14 (E.D. Cal. Dec. 5, 2022) ("[T]he new regulations do not
26 support a requirement that the ALJ articulate 'germane reasons' for rejecting lay witness
27 testimony, but only a requirement that the lay testimony was 'considered.'"); *Neri v.*
28 *Comm'r of Soc. Sec.*, 2022 WL 16856160, at *7 (E.D. Cal. Nov. 10, 2022) ("Based on a

plain reading of the revised regulations, the Court concludes the new regulatory framework requires an ALJ to consider lay testimony, but does not necessarily require him to articulate how he considered it.").

Here, however, the ALJ explicitly indicated that he considered Banikazemi's statements:

> [Plaintiff's] uncle has submitted two third-party function reports indicating [Plaintiff] is affected by substantial physical and mental limitations (Exhibits 7E, 13E). He reported [Plaintiff] is affected by pain syndrome, cervical dyskinesia, neck and back pain, mood/depression/bipolar disorder, and anxiety disorder. He indicated [Plaintiff] is affected by poor sleep, memory, and concentration. He further reported [Plaintiff] is very limited in his ability to perform house and yard work. He wrote [Plaintiff] can only lift 10 pounds and walk for 45-60 minutes before requiring rest. He indicated [Plaintiff] can pay attention for 30-45 minutes.

(AR 53-54.) Moreover, the ALJ explained why he discounted Banikazemi's statements:

> As with [Plaintiff's] allegations, his uncle's report is not entirely supported by the objective medical and psychiatric findings discussed below that shows largely intact physical function with no more than moderate mental deficits despite occasional psychiatric exacerbations. I have considered this third party non-medical opinion but find it neither inherently valuable nor persuasive, in accordance with 20 CFR 416.920b(c).

(AR 54.)

The ALJ's finding that Banikazemi's statements in the third-party function reports were inconsistent with the medical record was a "germane" reason for discounting the lay witness testimony. *See Collie v. Saul*, 837 F. App'x 497, 499 (9th Cir. 2021) (finding statements by claimant's wife and daughter were not persuasive because they were "in conflict with the medical evidence," which met "germane reasons" standard); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("Inconsistency with medical evidence"

11

was a germane reason for rejecting lay testimony); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) ("The ALJ properly discounted lay testimony that conflicted with the available medical evidence."); *Pierre R. v. Kijakazi*, 2022 WL 2829637, at *6 (C.D. Cal. July 20, 2022) (finding ALJ gave a "germane reason not to credit the lay witnesses' statements" because the "third-party allegations conflicted with the medical evidence in the record"). As such, the record shows that the ALJ properly considered and discounted the lay testimony.

Nevertheless, even if the ALJ had failed to state a "germane" reason for discounting Banikazemi's reports, the failure would be harmless under the circumstances of this case. The ALJ may reject third-party testimony that mirrors the claimant's testimony where the claimant's testimony is found to be not credible. *See Valentine*, 574 F.3d at 694 (holding that ALJ gave a germane reason for rejecting claimant's wife's testimony where it was similar to claimant's own complaints that were properly rejected). Here, the ALJ rejected Plaintiff's subjective symptom testimony because it was "not entirely consistent with the medical evidence and other evidence in the record"—a finding Plaintiff does not challenge here. (AR 54.) Because Banikazemi's statements in the third-party function reports were substantially similar to Plaintiff's discredited allegations, any failure to specifically address the third-party statements was harmless. *See Johnson v. Kijakazi*, 2022 WL 3998572, at *2 (9th Cir. 2022) ("Because the lay witness statements were largely duplicative of [plaintiff's] own testimony, the ALJ's failure to address the statements was inconsequential and therefore harmless.") (unpublished).

For these reasons, reversal is not warranted on this issue.

///
///
///
///
///
///

**ORDER**

It is ordered that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED: September 19, 2025

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE